434 So.2d 475 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Jimmy Wayne PARRISH, Defendant-Appellant.
No. 15402-KA.
Court of Appeal of Louisiana, Second Circuit.
June 6, 1983.
Rehearing Denied August 3, 1983.
*476 Rabun & Post by David F. Post, Farmerville, for defendant-appellant.
Dan J. Grady, III, Asst. Dist. Atty., Farmerville, for plaintiff-appellee.
Before MARVIN, FRED W. JONES and SEXTON, JJ.
MARVIN, Judge.
Defendant Parrish, indicted for 1st degree murder, appeals his conviction by a jury of the 2d degree murder of J.B. Little, raising six assignments of error, only five of which were briefed. We affirm.

ASSIGNMENTS ONE & TWO
In response to defendant's discovery motion, the state revealed on September 22, 1982, the substance of oral inculpatory statements made by defendant to his co-defendant Lassiter on the night of the crime. On November 9, 1982, the state revealed the substance of an oral statement made by defendant to a fellow inmate, Bearden, in the Union Parish Jail. On November 12, 1982, the state revealed the substance of an oral statement made by defendant to another inmate, Finley, in the jail.
On the day the trial was scheduled, November 15, 1982, defendant moved to suppress the statements allegedly made to the jail inmates on the grounds that the state purposely delayed its compliance with the continuing discovery order. CCrP Arts. 729.3, 729.5. Defendant also moved for a two-week continuance of the trial. The trial court held a hearing on defendant's motions. Defendant allegedly admitted to inmate Bearden that he beat the victim to death. His alleged admission to inmate Finley was that he was at the scene of the crime, contrary to his alibi evidence.
The Assistant District Attorney testified that he learned before October 27, *477 1982, that Bearden wanted to relate a statement by the defendant but he was unable to talk to Bearden in Union Parish because of a week of criminal jury trials in Lincoln Parish. The ADA interviewed Bearden in Union Parish on October 27, 1982, but Bearden appeared somewhat uncomprehensible because of medication he was taking following an accident. The ADA later talked to Bearden on November 9, 1982. He then talked to Finley on November 12, 1982, after he learned from Bearden that the defendant might have made admissions to Finley. On November 9, 1982, the state mailed notice of its intent to use Bearden's statement. On November 12, the state hand carried to defendant's counsel its notice to use the statement Finley made on that day. The trial court continued the trial to the afternoon of November 17, 1982, and denied defendant's motion to suppress, finding that the notice given defendant in each instance under the discovery process was "prompt" under CCrP Arts. 729.3, 729.5.
We find no error in the trial court's rulings, notwithstanding defendant's complaints that the "delay" in the notice was "purposeful" and the continuance of two days was "not meaningful". Defense counsel asserts that defendant probably would not have been called to testify had the "new" inculpatory evidence not been allowed. Defendant was not cross-examined by the state after he testified about his alibi and denied saying anything to Bearden. Defendant said nothing on the witness stand that prejudiced him. Bearden's statement was simply corroborative of Lassiter's statement, of which defendant was informed about two months before trial. Finley's statement simply related to defendant's being at the scene of the crime, was less corrobative than Bearden's statement, and was used to rebut defendant's alibi.
Defense counsel was appointed June 1, 1982. Defendant was arraigned on June 9 and notified the state of defendant's alibi defense on September 28, 1982. In October, on defendant's motion, the trial was continued to November 15, 1982, and after the continuance of that date, was held beginning November 17. Compare the two day continuance in State v. Burnette, 337 So.2d 1096 (La.1976); one month to prepare for trial in State v. Robicheaux, 412 So.2d 1313 (La.1982); 12 days to prepare for complex medical causation issues in State v. Durio, 371 So.2d 1158 (La.1979). Moreover, we observe that defense counsel conducted searching and detailed cross examinations of both Bearden and Finley. A showing of specific prejudice is usually required before a conviction will be reversed on the trial court's alleged abuse of discretion in refusing a continuance. CCrP Art. 712. State v. Gaskin, 412 So.2d 1007 (La.1982); State v. Hopkins, 351 So.2d 474 (La.1977). This required showing is not necessary where the time allowed defense counsel to prepare for trial is so obviously minimal that the "fairness" of the proceedings may be questioned. State v. Jones, 395 So.2d 751 (La.1981).
The argument that the state purposely delayed notifying defendant of the statements of Bearden and Finley is sorely lacking. See and compare State v. Fisher, 380 So.2d 1340 (La.1980), where defendant was notified of one of his several statements on the morning of his trial and was granted a 24-hour continuance.

ASSIGNMENT THREE
The co-defendant Lassiter made at least four statements to investigators between July 22 and October 9, 1982, all of which were inconsistent. In the first statement, Lassiter said he acted alone and killed the victim. In later statements, he implicated the defendant, explaining that he had lied in the first statement because defendant had promised to use connections to get him out of the charges if he would take all of the blame and not incriminate the defendant. Before defendant's trial, Lassiter pleaded guilty and was sentenced to concurrent sentences at hard labor, 40 years without probation, parole, or suspension for the armed robbery of J.B. Little, and 21 years for the manslaughter of J.B. Little. In his *478 last statement and at the trial, he stated that defendant robbed and killed the victim with a lug wrench and Lassiter's pocket knife and buried him while he was still alive.
When Investigator Reppond was cross-examined, defense counsel elicited the several inconsistencies in the statements made to Reppond by Lassiter, apparently attempting to have Reppond say that he made promises to Lassiter, after Lassiter's confession, to get him to incriminate defendant.
On redirect, Reppond was asked first to physically describe Lassiter (5'7", small frame, 130 lbs.) and secondly about his observance of the body of the victim. Defendant objected to the question whether it appeared to Reppond that Lassiter "could have done that all [the beating and stabbing, dragging of the body approximately 50 feet] by himself?". The jury was retired and, after somewhat lengthy argument, the trial court overruled the objection. Defendant now complains that it was error to allow Reppond to give opinion evidence without being qualified as an expert.
After the jury returned, however, Reppond was questioned about his past knowledge and observation of the victim and his physical description (Little was an inch or two taller, more muscular than Lassiter, and weighed about 180 lbs.). Reppond was next asked why he did not accept Lassiter's first statement that he acted alone [but continued the investigation and the interrogation of Lassiter]. This question was not objected to!!! Reppond answered:
"A. From what I could see, my own opinion, he was not physically able to overcome J.B. Little and do the damage that had been done. I didn't feel likeI felt like that J.B. Little was a large enough man that with the physical strength that ... Jan Lassiter had, to my opinion, was not strong enough to do it by himself.
"Q. Is that why you continued to question Mr. Lassiter?
"A. Yes, sir. Yes, sir."
Defendant's third assignment of error (about opinion evidence) is directed toward the question which was asked before the jury retired and the answer quoted above which was given after the jury returned and in response to the question why Reppond did not accept Lassiter's first statement.[1] Again we observe that defendant did not object to the question why, and state that under these circumstances we find no error. CCrP Art. 841, State v. Marcell, 320 So.2d 195 (La.1975). In any event, Reppond explained on re-direct his subjective intent, motive, or reason for his own actions after hearing Lassiter's first statement that he acted alone in the killing. This was not evidence offered as an expert opinion, but was relevant to explain Reppond's actions and course of conduct. In State v. Rideau, 249 La. 1111, 193 So.2d 264 (La.1966), similar evidence was held admissible for such a relevant purpose.

ASSIGNMENT FOUR
Defendant complains that he should have been allowed to introduce, as impeaching evidence, the four statements made to investigators by Lassiter. LRS 15:493. Lassiter distinctly admitted the substance and the inconsistencies in his statements. Lassiter admitted to making four different statements and to lying in the first 3½ statements. The converse of the impeachment statute is that if the witness, whose impeachment is sought, distinctly admits making the inconsistent statement(s), evidence of the statement(s) are rendered inadmissible. See State v. Albert, 414 So.2d 680 (La.1982); State v. Molinario, 383 So.2d 345 (La.1980); State v. Mosely, 360 So.2d 844 (La.1978). We find this assignment without merit.

*479 ASSIGNMENT FIVE
On rebuttal to defendant's alibi defense, inmate Finley testified that defendant told him he did not kill the victim but was present when the crime was committed. Cross-examination revealed that Finley was in jail for criminal neglect (non-support), that Finley denied being engaged in homosexual activity, in illegal conduct while cleaning the DA's office, and in bringing alcohol into the jail. Finley admitted that he voluntarily slept in the jail when he was not required to do so. Defendant complains that he should have been allowed to introduce surrebuttal to show Finley's bias against defendant because they had engaged in homosexual conduct.[2]
Defendant states in brief that "[t]he purpose of calling the other inmates and jailer was to show that [Finley] had perjured himself on the question of his homosexuality", that defendant himself would testify that he "broke off" his homosexual relationship with Finley and that Finley had taken or stolen a copy of one of the Lassiter statements from the file in the DA's office. Under these circumstances, the state did not introduce anything new into the case on rebuttal. Finley's statement of what defendant said to him merely places defendant at the scene and, of itself, is not inculpatory of the crime but is disproving of defendant's alibi defense. Bearden had testified in chief of defendant's inculpatory statement to him. Lassiter had testified in chief of defendant's involvement in the crime. The state did not exceed the scope of proper rebuttal or introduce for the first time anything new on rebuttal that was unfairly prejudicial to defendant. See State v. Perry, 408 So.2d 1358 (La.1982); State v. Turner, 337 So.2d 455 (La.1976).
The trial court has discretion to allow surrebuttal and its ruling will not be disturbed except in extreme cases. Turner, supra, at p. 459. We find no extreme case here and no error in this assignment.

CONCLUSION
Defendant was indicted for 1st degree murder. By unanimous verdict he was found guilty of 2d degree murder. The record shows that the victim was induced to leave a barroom in the company of defendant and defendant's companions, Wanda Forbes and Lassiter, to the rural area where defendant resided in a trailer, and that within a few miles of the trailer, the defendant and Lassiter took the victim to an oil well site where the victim was robbed and murdered and buried while he was still alive, but mortally wounded, and that defendant and Lassiter divided the money taken from the victim. On direct examination, defendant admitted having a prior criminal record. The jury, with the sole responsibility of assessing credibility, could have, and apparently did, assign no credibility to the testimony of defendant or his girlfriend who corroborated his alibi. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Finding no error in defendant's assignments, the conviction is AFFIRMED.
NOTES
[1] Defendant asserts:

"That the Trial Judge committed reversible error in allowing the state to introduce, over objection, Deputy Repond's opinion testimony that Jan Rex Lassiter was not physically strong enough to kill J.B. Little acting alone."
[2] We do not consider defendant's assertion that LRS 15:482 is unconstitutional because that assertion is made here for the first time. Rankin v. State Through Dept. of Public Safety, 385 So.2d 894 (La.App. 2d Cir. 1980); CCrP Art. 841.