496 So.2d 1322 (1986)
STATE of Louisiana, Plaintiff-Appellee,
v.
Joseph HELAIRE, Defendant-Appellant.
No. CR 86-499.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
Richard P. Weimer, Atty. at Law, Lafayette, for defendant-appellant.
Michael Harson, Asst. Dist. Atty., Lafayette, for plaintiff-appellee.
Before FORET, STOKER and LABORDE, JJ.
LABORDE, Judge.
The defendant, Joseph Helaire, was indicted for the crime of aggravated rape, a violation of LSA-R.S. 14:42. Following trial, the jury returned a verdict finding the defendant guilty as charged. The trial judge sentenced the defendant to life imprisonment without benefit of probation, parole or suspension of sentence. The defendant *1323 appeals his sentence alleging three assignments of error:
"1. The trial court erred in denying defendant's motion to exclude the testimony of Louis George or, in the alternative, to grant a mistrial on the basis of the State's failure to comply with discovery.
2. The State failed to prove each and every element of the crime of aggravated rape beyond a reasonable doubt.
3. All error patent on the face of the record."

FACTS
On August 1, 1985, during the morning hours, the victim, Hope Broussard, age 14, was at her home doing household chores. Also at home were four of Hope's brothers and sisters. Later that morning, the defendant, Joseph Helaire, the "common-law" husband of the victim's mother, arrived home and began making sexual advances towards Hope. According to the victim's testimony at trial, she tried to resist by moving away, but eventually the defendant grabbed her arm and pulled her into the bedroom. The victim testified that defendant lifted up her robe, pulled down her panties, got on top of her and forced her to have sexual intercourse with him. She further stated that as defendant held her arms, she resisted, screamed, and asked him to stop. The victim's younger brother, Brian Broussard, testified that he heard some crying from the bedroom, and peeped through the keyhole to see what was going on. Brian testified that once he entered the bedroom, the defendant stopped the act.
The victim left the residence shortly thereafter and went to Cheryl Benjamin's house. Ms. Benjamin then took the victim to the police station. The victim submitted to a rape kit examination at the police station and was later examined by a physician. The defendant was subsequently arrested and charged with aggravated rape, a violation of LSA-R.S. 14:42, and sentenced as stated above. The defendant appealed his conviction alleging three assignments of error.

ASSIGNMENT OF ERROR NO. 1
Defendant alleges that the trial court erred when it refused to exclude the testimony of Louis George or grant a mistrial due to the state's failure to comply with La.C.Cr.P. arts. 716(B) and 729.3.[1]
The purpose behind the discovery rules of the Louisiana Code of Criminal Procedure is the elimination of unwarranted prejudice which could arise from surprise testimony.
On the morning of the trial, February 19, 1986, the state notified the defendant of an inculpatory statement he had previously made to a fellow inmate, Louis George. In that statement, the defendant admitted to George that he committed the offense. That statement was received by the District Attorney's office on December 20, 1985. Essentially the defendant argues that the state's failure to comply with discovery resulted in the defendant being lulled "into misapprehension about the strength of the state's case." Relying on State v. Sweeney, 443 So.2d 522 (La.1983) and State v. Booth, 448 So.2d 1363 (La. App. 2nd Cir.1984), the defendant claims such misapprehension may constitute reversible *1324 error. The defendant alleges that he was prejudiced because if he had known of the existence of the statement to George, his approach to the case would have been different and possibly he would have negotiated a plea bargain agreement.
The state argues that it did comply with discovery because it promptly notified the defendant of the statement once it (the state) had knowledge of it. The state claims that the assistant district attorney was not present at the time the report was received, and it was simply filed into the file. Once the assistant district attorney learned of the statement on the morning of the trial, he immediately called defense counsel.
During motions on the morning of trial, the trial judge ruled that the state did comply with discovery, and he refused to grant the defendant's motion for a mistrial or exclusion of the inculpatory statement. The judge did grant the defense a one day delay to further prepare its case.
The state's failure to comply with discovery procedures which results in prejudice to the defendant constitutes reversible error. State v. Meshell, 392 So.2d 433 (La.1980). However, such a failure does not automatically require a reversal. This court will examine the circumstances to determine whether the defendant was actually prejudiced by the nondisclosure. State v. Strickland, 398 So.2d 1062 (La.1981). The facts indicate that the state did comply with discovery. The defense counsel admitted that he believed the assistant district attorney was in good faith and the trial judge found that the state complied with discovery.
State v. Fisher, 380 So.2d 1340 (La.1980) presents a similar fact situation to the instant case. In Fisher, supra, the district attorney informed the defendant on the day of trial of a prior statement made to a police officer. The Louisiana Supreme Court determined that the state complied with discovery because notice was given immediately upon coming into possession of it. "We are convinced from the evidence that the district attorney was in good faith and had no knowledge of the statement prior to the time it was fully disclosed to defendant. Disclosure of the statement was made prior to opening statements.... Moreover the trial was recessed until the next day after defendant had been informed of the statement." Fisher, at 1345.
In State v. Parrish, 434 So.2d 475 (La. App. 2nd Cir.), writ denied, 440 So.2d 760 (La.1983), notice given to defendant was "prompt" under the discovery statutes where the state learned of an inculpatory statement made by the defendant to an inmate and mailed notice to the defendant on the same day of its intent to use the statement, and later learned of another inculpatory statement made by the defendant to another inmate, and hand carried the notice to defendant's counsel on the same day of its intent to use such statement. The delivery of the hand carried notice occurred three days prior to trial.
In State v. Booth, 448 So.2d at 1366 the state indicated to the court that the discrepancy in the discovery answer had just been made known to them prior to trial. The court held that the state complied with its continuing duty to disclose.
Even if the state did violate a discovery order, this fact alone does not warrant automatic reversal.
La.C.Cr.P. art. 729.5(A) provides:
"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate."
This article gives a trial judge discretion to choose from a wide range of alternative sanctions. State v. Williams, 438 So.2d 1212 (La.App. 3rd Cir.), writ denied, 443 So.2d 590 (La.1983).
*1325 It is the role of the reviewing court to examine the circumstances of the case to determine whether defendant was prejudiced and if the trial court abused its discretion. State v. Freeman, 447 So.2d 1145 (La.App. 3rd Cir.), writ denied, 449 So.2d 1356 (La.1984).
"A mistrial is a drastic remedy and should be declared only when unnecessary prejudice results to the accused. The determination of whether prejudice has resulted lies within the sound discretion of the judge." State v. Spencer, 444 So.2d 354 (La.App. 1st Cir.1983), writ denied, 488 So.2d 694 (La.1986). The court has the discretion to consider the facts presented and to decide which course the interest of justice requires. For example, granting a recess to enable a defendant to prepare to meet the newly-revealed evidence may be more appropriate. State v. Clark, 446 So.2d 293 (La.1984).
We find that the state did actually comply with discovery, i.e. it gave prompt notice of the inculpatory statement once it had knowledge of its existence. Even if the state had not complied with discovery, the sanctions under La.C.Cr.P. art. 729.5(A) for failure to comply with discovery, are solely within the discretion of the trial judge. A reversal is warranted only when there is an abuse of such discretion and prejudice is shown. Here, the trial court used wise discretion in postponing the trial one day. Furthermore, the defendant failed to show that he was prejudiced. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
Defendant alleges that the state failed to prove each and every element of the crime of aggravated rape beyond a reasonable doubt.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
La.R.S. 14:42 defines aggravated rape as follows:
"A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
(5) When two or more offenders participated in the act."
The state relied on sections (1) and (2) of LSA-R.S. 14:42, subd. A. The defense argues that the state failed to prove the degree of force and resistance needed for aggravated rape under Section (1). The victim testified as to the degree of force and resistance as follows:
"Q. Now, Hope, while you and Joe were in your mother's bedroom, did you try to get away? Did you try to get him not to do this?
A. Yeah, but he still did it.
Q. Was he holding you down in any fashion?
A. Yes.
Q. How was he holding you?
A. He had my arms like on the bed, and I was trying to get away, but he wouldn't let me.
Q. Did you ask him to stop or not to do it?
A. I asked him to stop, but he wouldn't.
Q. Did you try to get away or get out from under him?
A. I tried, but he was too heavy.

*1326 Q. And your arms now, you say he was holding on the bed. How were they? Down by your side or above your head?
A. Above my head.
Q. Above your head?
A. (the witness shakes head indicating a negative response)
Q. Did he have a hand on each of your arms?
A. Yes.
Q. Were you crying?
A. Yes.
Q. During the time that this was going on, did you ever scream or hollar?
A. Yes."
The defense claims that the only other witness testifying as to the degree of the force employed was the emergency room physician who testified that she did find some redness to the victim's vaginal area, but she found no other evidence by any type of trauma.
In addition, the defense argues that there was no evidence of threats of great and immediate bodily harm accompanied by apparent power of execution. The victim testified concerning threats.
"Q. While you and Joe were in the room and this was taking place, did he ever threaten you?
A. He said he was going to do something to me and my momma and he told me that again. He told me that he was going to do something? That ... he said that he was going to do something to me and my momma and he said that I wouldn't like it."
The state argues that since the definition of force as it appears in section 42 of Title 14 of our Criminal Code does not give precise definitions as to what degree of force is required, the question of force must be determined in the light of common sense and reason and to be further based upon the circumstances of the individual case after consideration of the victim and the defendant. The state argues that it would take a much lesser degree of force to compel a young child to submit to an act of intercourse than it would to a grown woman.
The Louisiana Supreme Court has held that the sole distinction between the crimes of aggravated rape and forcible rape is "the degree of force employed and the extent to which the victim resists." State v. Parish, 405 So.2d 1080, 1087 (La.1981), affirmed, 429 So.2d 442 (La.1983). In Parish, supra, the high court concluded that it was the legislative aim to divide the continuum of acts of coerced sexual intercourse into two categories, aggravated rape and forcible rape; thereby, assigning to the jury the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed. See, State v. Willie, 422 So.2d 1128 (La.1982).
There is no magic formula to determine which acts of coerced sexual intercourse warrant the greater punishment of aggravated rape rather than forcible rape. Each case must be examined on its own facts. State v. Jackson, 437 So.2d 855 (La.1983).
Based upon the facts herein, and viewing the evidence in a light most favorable to the prosecution, the jury could determine that a sufficient amount of force was in fact used to constitute the crime of aggravated rape. State v. Robinson, 471 So.2d 1035 (La.App. 1st Cir.), writ denied, 476 So.2d 350 (La.1985).
Since the victim was only fourteen at the time of the offense and the defendant was much heavier and stronger, the jury could find that the victim resisted to her utmost. The threat of great and immediate bodily harm accompanied by apparent power of execution could be found by the jury when the defendant threatened to do something to her and her mother and she wouldn't like it. Stepping into the mind of the victim, viewing the evidence most favorable to the prosecution, it is conceivable that the defendant's threats could pose a great and immediate danger to the victim, especially since her offender represented an authoritative figure, her stepfather. In addition, the statute is clearly designed not merely *1327 to protect against threats upon the victim but also to protect against non-consensual sexual intercourse through destruction of the victim's will to resist. It is reasonably within the legislative intent to interpret the statute as prohibiting such rapes through means of threats of great and immediate bodily harm upon a person whom the victim is legally, morally or emotionally obliged to defend. State v. Crochet, 354 So.2d 1288 (La.1977). Thus the defendant's threat to the victim's mother would qualify as a threat of great and immediate bodily harm.
In light of the foregoing, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 3
The defendant asks for an examination of all errors patent on the face of the record. An examination of the record reveals no errors patent, therefore this assignment of error lacks merit.

DECREE
For the above and foregoing reasons, the conviction and sentence of defendant are affirmed.
AFFIRMED.
NOTES
[1] La.C.Cr.P. art. 716(B) states that:

"Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made."
La.C.Cr.P. art. 729.3 provides:
"If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection."