647 So.2d 525 (1994)
STATE of Louisiana, Appellee,
v.
Tommy THIBODEAUX, Defendant-Appellant.
No. 94-605.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
*526 Frederick Wayne Frey, Paul Peter Reggie, Lake Charles, for the State.
Robert Paul Shelton, Lake Charles, for Tommy Thibodeaux.
Before DOUCET, COOKS and DECUIR, JJ.
DOUCET, Judge.
On October 17, 1991, the defendant, Tommy Thibodeaux, was charged by bill of indictment with aggravated rape of his daughter, Hollie Racca. Following a trial by jury, the defendant was found guilty as charged on February 3, 1992. He was sentenced on March 13, 1992 to serve life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. On February 4, 1994, the defendant was granted an out of time appeal. Defendant filed seven assignments of error in the trial court; however, on appeal, he argues but two assignments consisting of a conglomerate of legal and factual issues. We find no merit to any of his arguments.
FACTS:
In 1991, Hollie Racca of Lake Charles, then eighteen years old, decided she wanted to meet her biological father, the defendant, Tommy Thibodeaux. Thibodeaux's marriage to Hollie's mother had ended when Hollie was very young; she had not seen the defendant in sixteen years. Hollie's mother, Mariel, later married David Racca and the child grew up as Hollie Racca. Mrs. Racca tried to discourage Hollie's interest in her biological father, but Mr. Racca supported it, apparently believing that Hollie was able to make up her own mind.
Hollie arranged a meeting with the defendant at a friend's apartment on August 24, 1991. Thibodeaux was accompanied to the meeting by his sister. After conversation and consumption of some beer and marijuana, Hollie, her father and aunt drove to the Candlelight Inn in Lake Charles. The defendant's sister dropped the other two off at the Inn, and Hollie continued talking with her long-lost father. At some point during the conversation, the defendant began fondling his daughter's breasts. When she protested, he said that since he had not seen her in a long time he "wanted to see how [Hollie had] turned out." As the defendant persisted with his unwelcome conduct, Hollie went to the motel office, arranged to be picked up by a friend and left the Inn.
The next morning, Hollie contacted the defendant again, having decided to "give him a second chance." When Hollie met the defendant at his room at 10:00 a.m., he was drinking but appeared sober to her. They conversed and watched television until David Racca met them at about 5:00 p.m. The three talked, drank beer and ate chicken for about an hour, then Mr. Racca left to go home.
Hollie went outside with Mr. Racca, who asked her if everything was all right and whether she needed anything. She responded that she felt comfortable with the situation, and Mr. Racca went home. When she reentered the room, the defendant asked her about her conversation with Mr. Racca and whether she wanted to leave. Although she said that she thought everything was all right and did not desire to leave, the defendant told her, "[w]ell, you're not gonna go anywhere."
The defendant then asked her to sit down, then lay down on the bed. The defendant, once again began touching her breasts, and Hollie again asked him to stop. He then told her that the only way he could "bust a nut" was if he fondled her breasts. When she pulled his hand down to her stomach and held it there, the defendant told the victim that if she did not allow him to continue fondling her breasts he would hurt her. She still did not acquiesce, so he punched her three times on the left side of her face. He then removed her shirt and tore off her bra. She screamed, but this had no effect.
*527 At that point, he ordered the victim to take off her pants; and when she resisted, he once again raised his fist. The combination of his raised fist and his prior statement to her that he had already killed three people so frightened Hollie that she then allowed him to remove her pants and underwear. The defendant then removed his pants and forced his penis into her vagina. The victim cried and tried to remind the defendant that he was her father, but this had no effect. After about five minutes, he ejaculated inside her.
ASSIGNMENTS OF ERROR:
We note that while the defendant assigned seven (7) errors in the lower court, he conglomerated his allegations into two (2) assignments on appeal. In his conglomeration of legal issues and fact, the defendant has failed to argue Assignments of Error Nos. 2, 4, and 7. It is well settled that failure to argue an assignment of error constitutes waiver of that error. See State v. Lewis, 576 So.2d 1106 (La.App. 3 Cir.), writ denied, 580 So.2d 669 (La.1991). See also Uniform RulesCourts of Appeal, Rule 2-12.4. Therefore, we deem defendant's assignments of error numbers 2, 4, and 7 abandoned and the same will not be discussed.
ASSIGNMENT OF ERROR NO. 1
Defendant's first assignment of error reads as follows:
1. The trial court erred in sentencing appellant to life imprisonment at hard labor without the benefit of parole, probation and [sic] suspension of sentence when the facts and circumstances warrants [sic] a conviction for the lesser offense.
A. The conviction of aggravated rape should be reduced to a lesser offense the facts and circumstances of this case even if the conviction withstand the charge of the plea to "not guilty by reason of insanity" [sic].
B. There is insufficient evidence that would support a conviction for aggravated rape.
Under this assignment of error, in brief, appellant argues two issues: 1) the excessiveness of the sentence imposed upon the defendant; and 2) that the testimony and evidence presented by the state was insufficient to sustain the defendant's conviction for the crime of aggravated rape.
Defendant was convicted of aggravated rape, a violation of LSA-R.S. 14:42, which prescribes a mandatory life sentence without benefits. In as much as the sentence is mandatory its imposition cannot be considered excessive.
As to appellant's argument that the verdict is not supported by the evidence adduced, it is well settled that when the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983); State v. Duncan, 420 So.2d 1105 (La. 1982). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove all the elements of the crime beyond a reasonable doubt. In the instant case the defendant was charged with aggravated rape, a violation of LSA-R.S. 14:42 which, at the time of the offense, provided in pertinent part as follows:
A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and *528 immediate bodily harm, accompanied by apparent power of execution.

* * * * * *
The term "rape" is defined in LSA-R.S. 14:41 as follows:
A. Rape is the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
B. Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.
The facts heretofore recited indicate vaginal intercourse occurred between the defendant and the victim. In addition to the victim's testimony and defendant's statement, crime lab analyst Faith O'Meara testified that seminal fluid was found on the victim's shorts and panties. Vaginal swabs taken from the victim contained intact sperm. Also, some degree of force was evidently used by the defendant to cause the victim to submit.
The victim testified that the defendant punched her three (3) times, chipping one of her teeth; forcibly ripped off her brassiere, and when she resisted removal of her pants and panties, he raised his fist a fourth time, causing her to allow her lower garments to be removed. Other witnesses testified that following the attack the side of the victim's face was red and partly swollen.
Further, the victim testified the defendant having previously told her that he had killed three people placed her in fear for her life. Additionally just before actual intercourse began, she again resisted physically, and made a final, vain attempt to avoid his attack by reminding the defendant that she was his daughter. Finally, the victim testified that she pulled muscles in her back and chest, trying to fend off the defendant's attack.
The defendant's brief makes much of the fact that the victim did not try to run for the door, but the victim testified that she was too frightened to attempt such an escape. We find there is sufficient evidence in the record to prove the defendant used force to accomplish his objective: sex with the victim. Accordingly, the defendant would be guilty of, at least, forcible rape, which is defined in LSA-R.S. 14:42.1 as follows:
A. Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
B. Whoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence.
It is well-established that the difference between LSA-R.S. 14:42, aggravated rape, and LSA-R.S. 14:42.1, forcible rape, is in the degree of force used by the offender and the extent to which the victim resists. State v. Parish, 405 So.2d 1080 (La.1981) (on rehearing), affirmed after remand, 429 So.2d 442 (La.1983); State v. Willie, 422 So.2d 1128 (La.1982). There is no hard rule for distinguishing between the two; each case must be examined on its own facts. State v. Jackson, 437 So.2d 855 (La.1983).
In State v. Helaire, 496 So.2d 1322, 1325-1327 (La.App. 3d Cir.1986), writ denied, 503 So.2d 13 (La.1987), the defendant challenged his conviction for aggravated rape, alleging insufficiency of the evidence. As in the present case, the state had relied upon sections (1) and (2) of the aggravated rape statute for the conviction. The defendant was the stepfather of his fourteen-year-old victim; he held her down and lay on top of her. The victim testified she screamed, but could not escape because the defendant held her arms and was too heavy. Additionally, the defendant threatened to harm her and her mother. A medical exam after the rape revealed trauma only to the victim's hymen.
On appeal, the defendant alleged that this evidence did not prove force sufficient to constitute aggravated rape. After citing Parish, Willie, and Jackson, supra, this circuit held that the evidence adduced by the state did meet the standard for a conviction *529 under the aggravated rape statute. In so doing, this court stated:
Stepping into the mind of the victim, viewing the evidence most favorable to the prosecution, it is conceivable that the defendant's threats could pose a great and immediate danger to the victim, especially since her offender represented an authority figure, her stepfather. In addition, the statute is clearly designed not merely to protect against threats upon the victim but also to protect against non-consensual sexual intercourse through destruction of the victim's will to resist.
(Helaire, 496 So.2d at 1326-1327).
Applying this reasoning to the present case, we find the current facts present at least as strong a basis for affirming an aggravated rape conviction as those in Helaire.
Although the victim here was eighteen rather than fourteen, she, unlike the victim in Helaire, was punched three times in the face, receiving a chipped tooth in the process. She only submitted to being fully disrobed when the defendant raised his fist a fourth time. Further, she continued to try physical resistance and moral persuasion as the defendant penetrated her. Also, she was raped by her own father, a fact which very likely had an affect on her will to resist at the time.
We note the defendant argues that the victim "was the initiator, willing participant, provoker of the incident, or at least enticed the offender" and that she "wore enticing clothing (jean shorts and a white shirt)." The facts simply do not bear out such an argument; the victim set out to meet her biological father, whom she had not seen since infancy. There is no evidence in the record that the victim had any sexual desire for defendant, much less "enticed" the defendant into a consensual sex act.
The defendant has also intermingled arguments as to insufficient evidence with arguments regarding his attempt to change his plea. His brief argues that his rape of his daughter was not the act of a rational man. Apparently, the defendant is arguing that he could not have formed criminal intent for the purpose of LSA-R.S. 14:42, as viewed under Jackson, supra.
However, as the defendant's insanity plea was properly excluded by the trial court, we find that speculation on this issue would be improper (see argument on this point, infra). Considering this circuit's earlier holding in Helaire, supra, we find the evidence presented by the state sufficient for a reasonable jury to find the defendant guilty of aggravated rape. Thus, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error defendant states the following:
2. The trial court erred in admitting inconclusive testimony as evidence and improper jury instruction [sic] and denying appellant's motion for change of plea from "Not Guilty", to "Not Guilty By Reason Of Insanity".
A. Tommy Thibodeaux was not afforded his constitutional rights when his relevant motion for change of plea to "not guilty by reason of insanity" was denied.
B. The evidence before the trial court does not show that Tommy Thibodeaux poses a paramount danger to society that would warrant life imprisonment.
In so far as the issue of defendant's change of plea is concerned, the following articles of the Louisiana Code Of Criminal Procedure are applicable:
1) Article 561The defendant may withdraw a plea of "not guilty" and enter a plea of "not guilty and not guilty by reason of insanity," within ten days after arraignment. Thereafter, the court may, for good cause shown, allow such a change of plea at any time before the commencement of the trial.
and
2) Article 761A jury trial commences when the first prospective juror is called for examination. A trial by judge alone commences when the first witness is sworn.
The defendant's arraignment occurred on November 18, 1991; he attempted to change his original "not guilty" plea to "not guilty and not guilty by reason of insanity" by a letter to the Clerk of the Fourteenth Judicial District Court dated December 1, 1991 and *530 filed into the record December 16, 1991. On the latter date a hearing was held and a sanity commission appointed. Defendant did not attempt to change his plea at that time. A sanity hearing was held on January 22, 1992, with the defendant being found competent to proceed to trial under the Bennett[1] criteria.
It was not until February 4, 1992, the second day of defendant's trial that he formally made a motion to change his plea. In an abundance of caution, the trial judge had the jury removed and held a hearing on defendant's motion. The defendant claimed he thought his prior counsel had already changed the plea. The trial judge denied the motion on the basis that the defendant had failed to show good cause and that the trial had already commenced. The defendant put forth no evidence to negate the conclusion reached by the sanity commission, or to otherwise support his motion.
It is well settled that a motion to change plea made after commencement of trial is considered untimely. State v. Anseman, 607 So.2d 665 (La.App. 5 Cir.1992), writ denied, 613 So.2d 989 (1993), also State v. Mercer, 564 So.2d 783 (La.App. 2 Cir. 1990). In the present case, the entire jury had been sworn by the time the defendant made his motion.
For the reasons discussed, this assignment of error is without merit.
In the original assignments and in his brief, the defendant complains of testimony given by Nurse Marla Goudeaux and the introduction, by her, of statements contained in learned treatises and medical journals. However, he never cites the testimony to which he is referring. Further, in the body of his brief, the defendant quotes the testimony of a totally different person, crime lab analyst Faith O'Meara. Our review of the record reveals no defense objections during either Nurse Goudeaux's or Ms. O'Meara's testimony. Thus, the contemporaneous objection rule precludes the defendant from raising errors related to either woman's testimony. La.Code Crim.P. art. 841, see also State v. Prudhomme, 532 So.2d 234 (La. App. 3d Cir.1988), writ denied, 541 So.2d 871 (1989).
This assignment, likewise, lacks merit.
In this same conglomerated assignment, defendant complains of an "improper jury instruction". No specific jury charge is mentioned and we find no objection in the record to the trial judge's instructions to the jury. Thus the contemporaneous objection rule (see above) also precludes our consideration of this alleged error.

ERROR PATENT
Under the authority of La.C.Cr.P. art. 920(2), this Court routinely reviews appellate records for patent error. After reviewing the record, we have discovered a patent sentencing error. Neither the minutes nor the sentencing transcript show that the trial court, in imposing the sentences, gave the defendant credit for time spent in actual custody prior to sentencing. Such an allowance of credit is mandatory. La.C.Cr.P. art. 880. While we are aware that the defendant's sentence is for life without benefit of parole, probation or suspension of sentence, we note and correct the failure to give credit for time served because this failure could make a difference if defendant's sentence is ever considered for commutation and, if a decision is made to commute his sentence, the failure could also make a difference as to when the commutation should take effect. See State v. King, 604 So.2d 661 (La.App. 1st Cir.1992). Resentencing is not required; however, we remand this case and order the district court to amend the commitment and minute entry of the sentence to give the defendant credit for time served.
Accordingly, for the reasons stated the defendant's conviction and sentence are affirmed. The case is remanded to the trial court for amendment of the commitment and minute entry of the sentence to reflect defendant is given credit for time served.
CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] State v. Bennett, 345 So.2d 1129 (La.1977).