JiDECUIR, Judge.
The defendant, Daimond Parker, appeals his conviction for the second degree murder of Lydia Parker. We reject his argument that the evidence was insufficient to support the conviction and affirm the jury’s verdict.

FACTS

On July 1, 1991, the 88-year-old victim, Lydia Parker, was found in her room, bruised and bleeding, by her granddaughter, Wanda Turner, who had just | ¿returned home. Defendant, Daimond Parker, Turner’s son, was the only person in the house with the victim while Turner was gone. The victim was rushed to the hospital, where she remained comatose until her death on August 16, 1991. The victim had suffered massive blunt trauma which crushed the bones around her right eye socket and cheekbone, causing intracranial hemorrhages, edema, and contusions. No weapon was recovered.

*1031
LAW AND DISCUSSION

The defendant asserts the trial court erred in denying his motion for a post-verdict judgment of acquittal, as the evidence adduced at trial was insufficient to support his conviction. La.Code Crim.P. art. 821(B):
B. A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). It is the role of the fact finder to weigh the respective credibility of the witness, and therefore the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983). In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt.
18As the defendant correctly notes, the case against him is circumstantial. The record is devoid of direct evidence that he is the killer.
La.R.S. 15:438 provides:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
Incorporating this under the Jackson standard, an appellate court must determine that viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact would have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. State v. Honeycutt, 438 So.2d 1303 (La.App. 3 Cir.1983), writ denied, 443 So.2d 585 (La.1983); State v. Morris, 414 So.2d 320 (La.1982).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). See also State v. Chism, 436 So.2d 464 (La.1983).
There is no real question as to whether a homicide occurred. The defendant told police that the victim had fallen, but doctors testified Lydia Parker’s injuries were inconsistent with a fall, but were consistent with a beating. The police forensic technician testified the blood-spatter patterns near the victim’s bed were consistent with blows to the head of a person lying in the victim’s bed. Additionally, the massive blunt trauma suffered by the victim indicates the killer had the specific intent to end her life or, at least, cause serious injury.
Thus, the present appeal revolves around the question of identity. All of the evidence on this point is circumstantial. In making its case, the state proved |4the defendant was the only person in the house with the victim when she was beaten. Wanda Turner testified there was only an approximate five-minute window during which the murder could have occurred. When she left to go to a neighbor’s house, the victim was in her room, alive and uninjured. Also, the shades were open, which was normal in their home.
Ms. Turner stated she returned home approximately five (5) minutes later, and found the shades closed, darkening the room. She attempted to speak to the victim, who did not respond. When Turner checked on her grandmother, she noticed facial swelling and blood. Also, the victim was covered by the sheet and bedspread. Her granddaughter found this unusual, considering the July heat. Turner then asked Parker, who was in a back room using the telephone, what had happened. Turner testified the defendant appeared “jittery, nervous, kind of wild.”
*1032 The defendant told police he had heard the victim calling “hey.” He entered her room and found her lying beside her bed, face-down. Parker surmised the victim had fallen; he lifted her into the bed and left the room. He noted no blood. The defendant’s rendition of events was recorded on videotape, and he outlined a similar scenario for his mother.
The evidence establishes the victim was beaten while the defendant was the only other person in the house. The defendant offered his mother, and investigating authorities, an explanation which is inconsistent with the victim’s injuries. The evidence reasonably permits a finding of guilty.
Parker’s trial counsel attacked the state’s case on a number of fronts:
1. Wanda Turner’s credibility. Although defense witnesses stated Ms. Turner had a poor reputation for truthfulness, witness credibility is firmly within the jury’s province.
IsA determination of the weight of evidence presented is a question of fact. The resolution of a matter where conflicting testimony exists requires a determination of credibility of the witness and is a matter of weight of the evidence and not sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3 Cir.1987), writ denied, 507 So.2d 226 (La.1987).
A fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Jackson v. Virginia, 443 U.S. 307, at 319, 99 S.Ct. 2781, at 2789, 61 L.Ed.2d 560 (1979). Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned. See State v. Mussall, 523 So.2d 1305, 1310 (La.1988).
2. Quality of the evidence. One of the paramedics who attended to the victim stated he did not see a portable toilet. All other evidence indicates there was a portable toilet in the room near Lydia Parker’s bed. It also appears on videotape. The defense attorney argued this discrepancy indicated furniture had been moved and evidence tampered with, thus limiting the trustworthiness of the evidence. He also noted that Turner had worked with the crime-scene technician, Jay Hartley, in the past as an airport security officer. This is essentially an argument as to credibility or weight of the physical evidence. The jurisprudence discussed above applies with equal strength to this attack.
3.The possibility of a third person in the house. Wanda Turner acknowledged she sometimes left her back door unlocked, and that her son had | e“questionable” friends, including Dwight Sam, an apparent drug-user. Sam had been with the defendant earlier in the day, when the defendant had been in possession of the victim’s social security check.
During the state’s case, Wanda Turner testified she had power of attorney for the victim, and normally cashed the victim’s social security checks. On the morning of the murders, the defendant had taken one of Lydia Parker’s government checks to a nearby store, and scribbled Ms. Turner’s name on the back of it. According to Ms. Turner’s testimony he gave her the cheek later that day, telling her “I didn’t cash it ... I just couldn’t do it.” On cross-examination, she acknowledged he had told her “he just couldn’t do that to his grandmother.” Recalled by the defense for further testimony, she also acknowledged it was likely the defendant knew the victim did not keep cash. Ms. Turner routinely handled the cheeks and money. Occasionally, a third party kept the money at Ms. Turner’s request.
In closing arguments, the state suggested that Daimond Parker killed his great-grandmother in frustration when he could not get any money from her. Considering the statements the defense elicited from Ms. Turner, legitimate doubt was cast upon this particular theory. The inculpating and exculpating testimony came from the same witness.
*1033 However, the question of “motive” has no importance of itself; it is only significant in relation to the light it casts on an offense’s elements. “Motive” itself is not an element of the crime. La.R.S. 14:8, 14:7. Thus, whether the state proved a robbery occurred is not crucial to the defendant’s conviction.
Given the current record, it is not reasonable to hypothesize that a third party entered the Turner/Parker residence, demanded money from Lydia Parker, beat |7her to death, closed the shades, pulled up her bed covers, and departed, all within five minutes and without being detected by the defendant. The defendant was alone in the house in a back room when Ms. Turner left and when she returned. She used the front door twice within approximately five (5) minutes. Logically, this increases the chances that a third party entering or leaving the house so quickly would have been noticed by Turner or Parker.
In closing arguments, the defense suggested Wanda Turner was the killer. The pivotal point of this argument was that she had lost her job the day of the murder. Although this indicates a possible motive, there is no evidence Turner is the killer.
4. A bloody t-shirt indicated the presence of some third party. The parties at trial entered a joint stipulation that blood found on a t-shirt in Ms. Turner’s laundry hamper was neither the defendant’s nor the victim’s. During the state’s case in chief, Ms. Turner testified that a few days after the murder (about July 4), she was preparing to do laundry and found a shirt at the bottom of her hamper. It was spotted with blood, so she turned it over to police. At the close of trial, the parties stipulated to the following:
THE REPORTER: .... “On July 2nd, Detective DiBenedetto told Wanda Turner that if she should find anything or discover any information that she thought may assist, to contact the Lafayette Police Department. Approximately three days after the incident she came to the Lafayette police station with a tee shirt she had located at the bottom of a clothes hamper, that appeared to have some blood on it near the shoulder. That was given to Mike Marlett, the evidence custodian. She did not indicate that it was the shirt the defendant was wearing that night. She just said, “I found this.” The District Attorney’s Office — last week we sent the shirt to have it tested. The report came back in where it indicated that analysis of the reference blood samples from Lydia Parker and Daimond Parker indicates that she has Group 0 blood and he has Group B blood. “A” antigenic activity was detected in a human blood stain on the white tee shirt.”
| ^Apparently the shirt had a single, quarter-sized blood splotch, but quantity was not discussed in the jury’s presence. This stipulation fails to render a “third-party killer” hypothesis any more reasonable, for the purposes of a Jackson review. Nothing in the record indicates a struggle or other circumstance, such that the killer would have bled on his own shirt.
In light of the overall record, the shirt merely indicates someone other than the victim or the defendant bled on his or her shirt at some point in time. Even if the blood type had been shown to match, for example, Wanda Turner’s or Dwight Sam’s, there is no time frame or circumstance in the record that reasonably connects the shirt or the blood to the present crime.
Viewing the evidence in the light most favorable to the prosecution, the jury reasonably found the defendant, Daimond Parker, guilty.
ERRORS PATENT
Louisiana Code of Criminal Procedure Article 880 provides that, when imposing sentence, the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record indicates the trial court did not do so. Thus, the defendant’s sentence is amended to reflect credit for time served prior to the execution of the sentence. See La.Code Crim.P. art. 882(A). Resentencing is not required; however, this case is remanded and the district court is ordered to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time *1034 served. State v. Moore, 640 So.2d 561, 564 (La.App. 3 Cir.1994), writ denied, 651 So.2d 858 (La.1995). Article 880 applies even to life sentences. State v. Thibodeaux, 94 — 605 (La.App. 3 Cir. 12/7/94) 647 So.2d 525.
IgAlso, it appears the defendant was not informed of La.Code Crim.P. art. 930.8 at the original sentencing. However, as Parker has successfully pursued post-conviction relief to obtain the present appeal, and cites article 930.8 in his application, the error is harmless.

CONCLUSION

The defendant’s conviction and sentence are affirmed.
AFFIRMED.