635 So.2d 653 (1994)
STATE of Louisiana, Plaintiff-Appellee
v.
Boyvic Bernard DUNCAN, Defendant-Appellant.
No. CR93-1384.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1994.
*654 Gerald Henderson, for State.
Harold A. Van Dyke III, for Boyvic Bernard Duncan.
Before GUIDRY and LABORDE, JJ., and CULPEPPER, J. Pro Tem.[1]
LABORDE, Judge.
Defendant appeals his conviction on two counts of armed robbery, violations of La. R.S. 14:64. He was sentenced to thirty years at hard labor without benefit of parole, probation, or suspension of sentence on one count, and forty years at hard labor on the second count, the sentences to run concurrently. Finding no reversible error committed by the trial court, we affirm defendant's conviction and sentence.

FACTS
On December 27, 1990, at approximately 1:00 a.m., defendant, Boyvic Bernard Duncan, robbed Lubricare Plus, a combination service station and convenience store located at the corner of Third and Willow Glen in Alexandria, Louisiana. Dewayne Scott and Jessie Jacobs, employees of Lubricare, were working at the time of the robbery. Defendant shot Jacobs in the head during the robbery.
On December 27, 1990, at about 9:00 p.m., defendant robbed the Shoe Town, located on Memorial Drive, also in Alexandria. Sharon Kibodeaux and Sara Scallon, employees of Shoe Town, were working at the time. Defendant was also armed during this robbery.
Defendant was indicted on two counts of armed robbery, violations of La.R.S. 14:64. On April 15, 1993, a jury found defendant guilty as charged on both counts.
On April 20, 1993, defendant filed a motion for new trial and a motion for post verdict judgment of acquittal. On June, 21, 1993, the trial judge denied both motions, then sentenced defendant to forty years at hard labor without benefit of parole, probation or suspension of sentence on count one, and thirty years at hard labor without benefit of parole, probation or suspension of sentence on count two. The sentences are to run concurrently with each other but consecutively to any previously imposed sentence he was serving.
Defendant appeals both convictions.

ERRORS PATENT
La.C.Cr.P. art. 930.8 provides that at time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows that the court did not so inform defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. C.Cr.P. art 921. The three year prescriptive period does not begin to run until the judgment is final under La. C.Cr.P. art 914 or 922, so prescription is not yet running. Apparently, the purpose of notice under Article 930.8(C) is to inform defendant of the prescriptive period in advance; thus the trial court is directed to inform defendant of the provisions of Article 930.8 *655 by sending appropriate written notice to defendant within ten days of the rendition of this opinion, and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Reeves, 613 So.2d 1061 (La.App. 3 Cir.1993).

ASSIGNMENT OF ERROR NUMBER ONE
Defendant alleges that the trial court erred in failing to suppress evidence of the lineup identifications. Defendant contends that the admission of the lineup evidence unduly prejudiced him and was violative of his constitutional rights.
La.C.Cr.P. art. 703(A) allows a defendant who is adversely affected to move to suppress any evidence that is unconstitutionally obtained.
To suppress an identification, defendant must prove that the identification was "suggestive," and that there was a likelihood of misidentification in the identification procedure. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Doucet, 380 So.2d 605 (La.1979).
In the present case, each witness who viewed a lineup did so outside the presence of any other witness. The persons in the lineups were all dressed in matching jumpsuits. The photographs used in the photograph lineup had no distinguishing marks. Under the circumstances, we conclude that the procedure used in each lineup was not suggestive.
Additionally, we must evaluate the suggestiveness of the identification procedure to determine whether the persons or pictures used in the lineup display defendant so singularly that the witness' attention is unduly focused on the defendant. State v. Guillot, 353 So.2d 1005 (La.1977). In determining whether the lineups displayed defendant in a singular fashion drawing undue attention, a strict identity of characteristics is not required. Rather, only a sufficient resemblance of others in the lineup is necessary to reasonably test the identification. State v. Guillot, supra, at 1008; State v. Gray, 351 So.2d 448 (La.1977). This determination is made by examining articulable features of the pictures or persons used. These features may include height, weight, build, hair color, hair length and texture, facial hair, skin color and complexion, and the shape of the nose, eyes, and lips.
Black and white photographs were taken at each of the live lineups. The photograph labelled "S-1" depicts the lineup as seen by witness Jacobs, while "S-2" is representative of the lineup viewed by witness Scott. Our examination of each of the lineups reveals that the individuals in each lineup bear a sufficient resemblance to each other to reasonably test the identification by the witness. The Guillot test is passed.
Nor do we find merit to defendant's assertions regarding Kibodeaux's identification of him as the assailant at Shoe Town. Where photographs show only heads and shoulders, features such as height, weight and build are of limited relevance. State v. Guillot, supra, 353 So.2d at 1008. Kibodeaux viewed six photographs taped to a manila folder. All persons in the photographs have similar hair color and length. All have mustaches. All have similar noses, eyes and lips. Several of the photos have similar skin color, complexion, and hair styles.
We find that the photographs sufficiently resemble one another to reasonably test the identification made. The lineup did not display defendant in a singular fashion drawing undue attention to him, nor was it shown that a suggestive identification procedure was utilized in his identification.
Moreover, defendant would be entitled to no relief under the circumstances even if we were to accept as true his argument that the identification procedure was suggestive.
Assuming a suggestive identification procedure, courts must look to several factors to determine, from the totality of the circumstances, whether the suggestive identification presents a substantial likelihood of misidentification. These factors were initially set out in Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), and approved in Brathwaite, supra. They include: (1) the *656 opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Id. 432 U.S. at 114, 97 S.Ct. at 2253. "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." Id.; see also State v. Lowenfield, 495 So.2d 1245 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986); State v. Prudholm, 446 So.2d 729 (La.1984); State v. Winn, 412 So.2d 1337 (La.1982).
State v. Martin, 595 So.2d 592, 595 (La.1992). In other words, even where an identification is considered suggestive it is usually still necessary to evaluate the likelihood of misidentification. It is only where the identification violates both of these tests that a defendant's right to due process has been violated. Manson v. Brathwaite, 432 U.S. at 2253, 97 S.Ct. at 114; State v. Guillot, supra, 353 So.2d at 1008.
Out of an abundance of caution, we will examine the present case in light of the Martin factors. In the present case, the witnesses clearly had an opportunity to view the defendant during each of his criminal episodes. Both the stores were well lit. Scott testified that defendant was present at the Lubricare Plus for approximately twenty minutes total, though he was not always looking at defendant. Kibodeaux testified that because of the timed lock safe at the Shoe Town, defendant was present at least twenty minutes, during which time she was able to view him several times.
As to the witnesses' degree of attention, both Jacobs and Kibodeaux testified that defendant had their full attention for extended periods. Both testified that they were able to look defendant straight in the eyes as money was retrieved from the cash registers for defendant. Kibodeaux also was able to view defendant when she went to get the keys for the safe. Finally, Scott testified that although he was not always looking at defendant during his criminal act he did have several chances to steal glimpses of him.
The third Martin factor is consideration of the accuracy of the witnesses' descriptions. Jacobs was in the hospital and in a lot of pain right after the robbery for gunshot wounds to his head and could not supply the police with much help at the time, except to volunteer that the suspect had a "curl." Later, in November of 1991, Jacobs contacted the Alexandria Police Department to inform them that one of the pictures on the front page of the city newspaper was that of the man who had robbed the Lubricare Plus and shot him. Additionally, Scott described the robber as being a black male, five foot six inches tall, weighing 150 pounds and wearing his hair in a "Jeri" curl, and Kibodeaux described the robber as a black male, five foot eight inches tall weighing approximately 175 to 180 pounds.
The fourth factor to be considered is the level of certainty demonstrated at the confrontation. Each of the witnesses, Jacobs, Scott and Kibodeaux, picked defendant out of a lineup without exhibiting hesitation.
The final Martin factor to be considered is the time lapse between the crime and the confrontation. Not quite a year passed between the time the crime was committed December 27, 1990, and the lineups on November 25 and December 4, 1991. Certainly the passage of so short a period does not ipso facto negate the traumatic image defendant seared of himself into the minds of his victims.
Considering the five factors set forth above, even had the lineups been suggestive, we find remote the possibility that each of the witnesses misidentified the same alleged perpetrator. Each had an opportunity to view the criminal at the time of the crime, each had their undivided attention focused on the criminal at the time, and each displayed certainty in identifying defendant in the lineup. The trial judge properly ruled this evidence was admissible. Defendant did not carry his burden of proving the lineup unduly prejudiced him, thus violating his constitutional rights.

ASSIGNMENTS OF ERROR NUMBERS THREE AND FOUR
By these assignments of error, defendant alleges that the evidence presented was insufficient to sustain a conviction.
*657 When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses; the appellate court should not second guess these determinations beyond the sufficiency evaluations called for by the Jackson standard of review. See State ex rel. Graffagnino, supra, 436 So.2d at 563, citing State v. Richardson, 425 So.2d 1228 (La.1983). In accord, La.C.Cr.P. art. 821 (motion for post verdict judgment of acquittal granted only if the evidence, viewed in a light most favorable to the state, does not reasonably permit finding of guilt.)
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. Armed robbery is defined as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La.R.S. 14:64(A).
As to the first count of armed robbery, the state presented evidence that on December 27, 1990, at approximately 1:00 a.m., defendant entered the Lubricare Plus, a service station and convenience store, and asked for change for a twenty dollar bill. After Jacobs opened the register, defendant, armed with a gun, backed away from the counter, pulled out the gun and told Jacobs to give him all the money. Jacobs testified that he picked up the five and the ten dollar bills and then just as he was about to pick up the twenty dollar bill, defendant shot him. Up until this time Jacobs had been looking directly at defendant. Later, Jacobs identified defendant as the assailant both in a lineup and in court.
His co-worker, Scott, also identified defendant in the lineup and in court. His testimony differed somewhat from that of Jacobs. He stated that defendant entered the store once before actually robbing it. Scott stated that defendant pulled the gun on him first and then after they walked to the cash register defendant demanded money from Jacobs. Scott testified that defendant then asked both men to get down on the ground slowly. Scott testified that defendant shot Jacobs when he tried to move away.
We do not find differences in the witnesses' recollections as to the details of the Lubricare robbery to require our reversal of the trial court's conclusions, as the prosecution unquestionably proved the essential elements of the crime. Where conflicting testimony exists, calling for a determination of credibility of the witness is a matter of weight of the evidence and not its sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3 Cir.), writ denied, 507 So.2d 226 (La.1987). Under the circumstances, the jury was free to accept as true the testimony of one or more witnesses over that of defendant, even if the witnesses have conflicting recollections as to the sequence of events.
A fact finder's discretion will be impinged only to the extent necessary to guarantee the fundamental protection of due process of law. Jackson v. Virginia, 443 U.S. at 319, 99 S.Ct. at 2789. Where rational triers of fact could disagree as to the interpretation of the evidence, and a defendant is found guilty, the view of all the evidence most favorable to the prosecution must be adopted on review. Only irrational convictions by the trier based on questions of fact will be overturned. See State v. Mussall, 523 So.2d 1305, 1310 (La. 1978).
We find no such problems here. The jury did not act irrationally in finding defendant guilty and the evidence, viewed in the light most favorable to the state, was sufficient for a rational trier of fact to find defendant *658 guilty beyond a reasonable doubt as to the first count of armed robbery.
Nor was error committed as to the Shoe Town conviction. The evidence presented by the state as to this count of armed robbery included the testimony of both Kibodeaux and Scallon. Both testified that on December 27, 1990, approximately 9:00 p.m., defendant entered the Shoe Town where they worked. Defendant asked for the manager and Scallon directed him to Kibodeaux. Kibodeaux testified that he showed her a gun and told her to go to the register. Both testified that Kibodeaux gave him the money. When asked where the rest of the money was, Kibodeaux explained that there was a time-activated safe. Defendant directed Scallon to lock the front door and leave the keys in the lock. After ten minutes had passed, Kibodeaux realized the keys were not in the safe and therefore the safe would not open. Defendant let Kibodeaux retrieve the keys from the door and activate the safe. The two testified that while waiting for the safe to open defendant retrieved a few pairs of tennis shoes from the shelves and put them in a garbage bag. When the safe was opened, Kibodeaux gave defendant the money and he left. Kibodeaux estimated that defendant got $350.00 in cash. She later identified defendant in the photograph lineup, and both she and Scallon identified defendant as the robber in court.
The evidence taken in the light most favorable to the state without question was sufficient for a rational trier of fact to find defendant guilty beyond a reasonable doubt of the two counts of armed robbery. We therefore find both of these assignments of error to be without merit.

ASSIGNMENTS OF ERROR NUMBERS TWO AND FIVE
Defendant alleged that the trial court erred by refusing to grant his motion for mistrial and in refusing to grant his motion for a new trial. However, defendant did not argue either of these assignments of error in brief.
Failure to argue an assignment of error constitutes a waiver of that error. State v. Lewis, 576 So.2d 1106, 1110 (La.App. 3 Cir.), writ denied, 580 So.2d 669 (La.1991); Uniform RulesCourt of Appeal Rule 2-12.4. Therefore, defendant's assignments are deemed abandoned.

DECREE
Defendant's conviction and sentence are affirmed. The trial judge is instructed to notify defendant of the three year period for filing post-conviction relief by sending defendant appropriate written notice to defendant, and filing such notice into the record under C.Cr.P. art. 930.8.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.