# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 10-1175

STATE OF LOUISIANA

VERSUS

JEFFERY LEE GUILLORY

**********

**APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 119186
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE**

**********

**JAMES T. GENOVESE
JUDGE**

**********

Court composed of John D. Saunders, Billy H. Ezell, and James T. Genovese, Judges.

**AFFIRMED WITH INSTRUCTIONS.**

**Edward K. Bauman
Louisiana Appellate Project
Post Office Box 1641
Lake Charles, Louisiana  70602
(337) 491-0570
COUNSEL FOR DEFENDANT/APPELLANT:**
     Jeffery Lee Guillory

**Michael Harson**
**District Attorney - Fifteenth Judicial District**
**Alan P. Haney - Assistant District Attorney**
**Post Office Box 4308**
**Lafayette, Louisiana 70502**
**(337) 291-7009**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Jeffery Lee Guillory**
**#126268, Death Row C.C.R.-E-5**
**Louisiana State Prison**
**Angola, Louisiana 70712**
**DEFENDANT/APPELLANT: In Proper Person**

**GENOVESE, Judge.**

In this criminal case, Defendant, Jeffery Lee Guillory, appeals his convictions by jury of attempted second degree murder and second degree robbery, alleging that the trial court erred in denying his motion to suppress. Defendant also appeals his sentences on both convictions, alleging excessive sentences. For the following reasons, we affirm Defendant's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

On May 20, 2008, the State filed a bill of information charging Defendant with one count of second degree robbery, a violation of La.R.S. 14:64.4, and two counts of unauthorized use of an access card, violations of La.R.S. 14:67.3. However, the State filed an amended bill of information on January 4, 2010, adding one count of attempted second degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30.1.

Defendant filed a motion to suppress which was heard and denied by the trial court on March 2, 2010. The State then opted to proceed against Defendant with the charges of attempted second degree murder and second degree robbery. After a jury trial, the jury found Defendant guilty as charged on both counts.

Defendant filed a motion for new trial which was heard and denied by the trial court on March 15, 2010. The court then sentenced Defendant to fifty years at hard labor on his conviction of attempted second degree murder and a concurrent term of forty years at hard labor on his conviction of second degree robbery.

Defendant appeals his convictions and sentences, assigning two errors through counsel and one error pro se. Defendant's pro se error is included in the assignments of error by his counsel.

On December 29, 2007, the victim, Johnnie Martinez, was heading home on a local bus in Lafayette, Louisiana, after finishing a shift at her job. At approximately

5:55 p.m., she got off the bus and headed toward a wooded trail that led to a nearby Walmart. A male individual approached her and asked for bus fare. As she started to give him some change, he punched her and dragged her into the woods. The victim fought back, but the individual overpowered her. Her left eye began swelling shut, and she fell to the ground. After the individual delivered more punches to the victim, he choked her. The victim played dead, thinking and hoping the individual would stop beating her. The individual then left the scene with her purse, which contained cash and an ATM card.

After the victim was helped by a "good Samaritan," she was taken to the hospital, and a police investigation ensued. Upon her release from the hospital, the victim realized her ATM card was being used. Police obtained surveillance footage from an ATM in Baton Rouge. A detective showed a still image from that footage to the victim, and she identified the man in the picture as her assailant. The man in the surveillance footage in Baton Rouge was Defendant. Later, she also identified Defendant in a photographic line-up.

**ASSIGNMENTS OF ERROR**

In brief, counsel for Defendant lists the following two assignments of error:

1.   The Trial Court erred in denying Jeffery Lee Guillory's Motion to Suppress Photographic Lineup.

2.   The Trial Court erred in imposing excessive sentences.

Defendant submitted a pro se brief containing only one assignment of error, virtually the same error as that listed in Assignment of Error Number 1 by his appellate counsel. They will be addressed jointly as one assignment of error.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are two errors patent.

First, we note that the record indicates that Defendant was sentenced immediately after his motion for new trial was denied by the court. Louisiana Code of Criminal Procedure Article 873 requires that there be a twenty-four-hour delay between the denial of a motion for new trial and the imposition of sentence. However, defense counsel expressly waived the delay required by La.Code Crim.P. art. 873 when he announced that they were ready for sentencing. This court has found an express waiver occurs when defense counsel responds affirmatively when the trial court asks if he is ready for sentencing. *See State v. Williams*, 01-998 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, *writ denied*, 02-578 (La. 1/31/03), 836 So.2d 59.

Secondly, we note that Defendant was given incorrect information regarding the time limitation for filing an application for post-conviction relief. At sentencing, the trial court advised the Defendant, "You have two (2) years from this date, sir, to file any Post Conviction Relief Petition, the date that your conviction becomes final [sic]." Louisiana Code of Criminal Procedure Article 930.8 provides that Defendant has two years after the conviction and sentence become final to seek post-conviction relief. Therefore, we direct the trial court to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within thirty days of the rendition of this opinion and to file written proof in the record that the Defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05),

3

903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## ASSIGNMENT OF ERROR NO. 1 (which includes
## Defendant's pro se Assignment of Error)

In defense counsel's brief and Defendant's pro se brief, it is argued that the trial court erred by denying Defendant's motion to suppress. Specifically, Defendant contends that the identification procedure was suggestive, and thus, there was a substantial likelihood of misidentification. He notes that the victim knew that the first photograph a detective showed her depicted someone who had used her ATM card. Further, Defendant argues that viewing the lone photograph in advance of the photographic line-up tainted the victim's identification of his photograph in said line-up.

A trial court's ruling on a motion to suppress will not be reversed absent an abuse of that discretion. *State v. Lee*, 05-2098 (La. 1/16/08), 976 So.2d 109, *cert. denied*, __ U.S. __, 129 S.Ct. 143 (2008).

Louisiana courts have stated: "The display of a single photograph of defendant rather than an array of photographs depicting different individuals has repeatedly been held to be improper. *State v. McLeland*, 456 So.2d 633 (La.App. 2nd Cir.1984), *writ denied*, 461 So.2d 312 (La.1984)." *State v. Hensley*, 608 So.2d 664, 669 (La.App. 3 Cir. 1992), *writ denied*, 613 So.2d 972 (La.1993). "The Supreme Court of the United States has noted that single photograph identifications should be viewed in general with suspicion. *Simmons v. United States*, 390 U.S. 377, 383, 88 S.Ct. 967, 970-71, 19 L.Ed.2d 1247 (1968)." *State v. Martin*, 595 So.2d 592, 595 (La.1992).

However, this is not simply a single-photograph identification case. In the instant case, the single-photograph identification was followed up with a subsequent photograph identification line-up. According to the facts in this case, the

4

single-photograph identification does not necessarily invalidate the subsequent

identification via the photograph line-up. Both parties discuss *State v. Rosette*,

94-1075 (La.App. 3 Cir. 3/22/95), 653 So.2d 80, which quoted the following

language from another case:

> Moreover, defendant would be entitled to no relief under the circumstances even if we were to accept as true his argument that the identification procedure was suggestive.
>
> Assuming a suggestive identification procedure, courts must look to several factors to determine, from the totality of the circumstances, whether the suggestive identification presents a substantial likelihood of misidentification. These factors were initially set out in *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), and approved in *[Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243 (1977)]. They include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. *Id.* 432 U.S. at 114, 97 S.Ct. at 2253. "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Id.*; *see also State v. Lowenfield*, 495 So.2d 1245 (La.1985), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986); *State v. Prudholm*, 446 So.2d 729 (La.1984); *State v. Winn*, 412 So.2d 1337 (La.1982).
>
> *State v. Martin*, 595 So.2d 592, 595 (La.1992). In other words, even where an identification is considered suggestive it is usually still necessary to evaluate the likelihood of misidentification. It is only where the identification violates both of these tests that a defendant's right to due process has been violated. *Manson v. Brathwaite*, 432 U.S. at 2253, 97 S.Ct. at 114; *State v. Guillot*, [353 So.2d 1005, (La.1977)].

*State v. Duncan*, 93-1384, pp. 4-5 (La.App. 3 Cir. 4/6/94), 635 So.2d 653, 655-56,

*writ denied*, 94-1067 (La. 10/28/94), 644 So.2d 649.

The State argues that the single-photograph identification was not suggestive

because the detective showed it to the victim for the sole purpose of determining

whether the man in the photograph was authorized to use her ATM card. It also argues that the detective had to show the lone photograph to her for identification purposes because he did not know who the man in the picture was.

In this case, the victim had reported the crime, and the detective had obtained photographs of a man using her ATM card in Baton Rouge. Since the police knew a robbery had occurred, there was little chance that the man in the pictures was authorized to use the ATM card. The detective was also able to compose a six-photograph line-up within three hours of showing the single photograph to the victim, so there does not appear to be a compelling time element at issue. Also, the victim's identification of the man in the picture as her attacker did little to actually identify him, as evidenced by the detective's testimony in the following colloquy from the motion to suppress hearing shows:

> Q.    Okay. The ATM photo was shown first, and then at that point when you showed it to her and she identified that person in the photo as the person that attacked her, at that point did you know who the person was?
>
> A.    No.
>
> Q.    No, okay. How did you learn who this person was?
>
> A.    I left from her house and went to the Sheriff's Department, the Warrant Division, and I spoke with at that time [sic] Sgt. Dale Thomas. They know a lot of people. So I figured that was my best bet, to talk to him; showed [sic] it to him. He didn't know who it was. He told me he would go to the shelters and get on the street and see if he could identify who that person was.
>
> From there I went back to the police department, got up there and started showing the photo on the second floor, which is the detective floor, and Sgt. Cormier looked at it and told me that he had previously dealt with an individual who should have this information.
>
> So I was like, okay. And he kind of gave me a little rundown. So I went back and pulled my file. When I pulled my file, I pulled a picture out that I had back then, placed it next to the photo of the ATM. It was

6

him.

So at that time I was able to at least get a name and the information I need[ed; I] submitted the form immediately for the photo lineup, and that's how I actually got his name and information.

Q. Now, are you aware of how these photo lineups are made? I mean, what's the procedure in making it?

A. To my knowledge -- I never put one together. But basically they take the information we give them on the form, that we submit, they pull that person. At that time the database goes through probably hundreds of thousands of people that were arrested with similar features; whether they're bald, it's going to be six (6) pictures of bald men. If they're black, obviously they'll be black; white, whatever; facial hair.

They try to match up five (5) other people to put in that lineup that are very similar to the person that you submit. And then we also can look at that lineup when we get there. And if we don't like it, if it's not close enough, you've got somebody you know that [sic] that's going to make it difficult to have a good lineup, you can take them out[,] and they can put somebody else in there so to make it as close as possible.

Q. Okay. And as far as you know that was done; that's what would have been done in this case.

A. Yes.

MR. HANEY: I have no further questions, Judge.

RECROSS-EXAMINATION

BY MR. MCCANN:

Q. Detective, would it be fair to say that instead of identifying the ATM photograph as the ATM photograph of a person that was using Ms. Martinez's card, you could have said, "This is a generic photograph that I came in contact with. Does this person look familiar to you?"

Couldn't you have done that?

A. Yeah, I guess I could have.

MR. MCCANN: Thank you very much.

That's all I have, Your Honor.

At trial, the detective acknowledged that the procedure he used was "not a preferred

7

method." Therefore, Defendant is correct in asserting investigators had resources available to compose a photograph line-up without resorting to the single-photograph identification.

However, even if the single-photograph identification prior to the photograph line-up was suggestive, the later identification may still be valid, as noted in *Duncan*. As previously discussed in *Duncan*, there are five factors listed for consideration in a determination of suggestive identification. Regarding the first factor listed in *Duncan*, the victim apparently had ample opportunity to view Defendant. At the motion hearing, the victim testified that Defendant punched her several times and that her left eye swelled shut; however, her right eye was fine. Defendant cites her trial testimony that her attention was not focused on her attacker when he first approached. However, the victim stated there was enough light to see him in the woods, and she "had also seen him real good" when they were fighting before he dragged her into the woods. However, it is not clear how long the offense lasted. At the suppression hearing, the victim stated it began at approximately 5:55 p.m. Defense counsel suggested the incident was over by 6:20 p.m.

Regarding the second factor in *Duncan*, i.e., the victim's degree of attention, she testified that she made a conscious effort to observe and remember him. At trial, she explained that when she realized Defendant was pulling her into the woods, she "started really, really, really paying attention to his face." Although Defendant argues the scene was dark, she testified it was light enough for her to see him clearly. Further, as mentioned earlier, she got a good look at him before he dragged her into the woods.

The third *Duncan* factor is accuracy of the prior identification. The victim

8

described her attacker to police as being approximately five feet, eight inches tall, and between two hundred and twenty and two hundred and fifty pounds. However, she acknowledged not being good at estimating height or weight. She also stated that the robber had "droopy cheeks" with no facial hair. However, she did not mention the "droopy face" characteristic to Detective Rhodes in her initial statement to him. She also testified that during her prior art training, "one of the things [she] was best at was faces." The investigator, Detective Rhodes, testified that he is five feet, eight inches tall and that Defendant is taller. After viewing a photograph of Defendant from the local sheriff's office, the detective acknowledged that identifying information included with the picture stated Defendant was six feet tall. The victim repeatedly described Defendant as having "droopy cheeks" much like a cartoon character. However, Defendant states that he had facial hair and contends that "[h]e does not have a 'droopy' face." Having viewed the photos of Defendant introduced at the motion to suppress hearing, we find that Defendant could have easily been described as "sleepy-eyed," and we note that his moustache is quite thin.

Defendant makes reference to the victim's written statement wherein she had described her assailant as "nondescript." However, we note that the victim explained that she meant no scars, birthmarks, or tattoos. Defendant also argues that there was a discrepancy between the victim's description of Defendant's clothing and the description given by another witness who testified he saw Defendant in the area; however, we find that that argument was made in the context of sufficiency of the evidence rather than admissibility.

In his pro se argument, Defendant contends that the victim was unsure whether the offender wore a tan jacket and gray shirt or vice versa. However, uncertainty on

such a point does not indicate the victim's identification of Defendant's face was doubtful. Also, the trial judge was able to see Defendant in person and, thus, was in a better position to evaluate the quality of the identification.

Regarding certainty, the fourth *Duncan* factor, the victim showed a high degree of certainty at the motion to suppress hearing and at trial. Detective Rhodes testified that she showed complete certainty when she identified the man using her ATM card as her attacker. He stated that she remained certain when she identified him in the photograph line-up.

With regard to the fifth and final *Duncan* factor, i.e., the time between the crime and the confrontation, we note that the crime occurred on December 29, 2007, and the photographic identifications occurred on January 7, 2008. Thus, the victim identified the picture of Defendant a little more than a week after the offense.

After a careful review of the record, after due consideration of the testimony of the witnesses relative to the photographic identifications, and after consideration of the five *Duncan* factors, we do not find that the trial court abused its discretion in denying Defendant's motion to suppress. Thus, these assignments lack merit.

## ASSIGNMENT OF ERROR NO. 2

In his final assignment of error, Defendant argues that his fifty-year sentence for attempted second degree murder and his forty year sentence for second degree robbery were excessive. He also argues that the trial court failed to consider mitigating circumstances as required by La.Code Crim.P. art. 894.1.

Defendant claims that he received the maximum terms on each conviction and that such terms were unconstitutional. However, the motion did not state exactly why the terms were unconstitutional; therefore, any claims not specified in his motion are

10

barred by La.Code Crim.P. art. 881.1(E). Nevertheless, "in the interest of justice, this court has previously chosen to review such an assignment of error as a bare claim of excessiveness. *State v. Hargrave*, 05-1027 (La.App. 3 Cir. 3/1/06), 926 So.2d 41, *writ denied*, 06-1233 (La.11/22/06), 942 So.2d 552." *State v. Blue*, 08-756, p. 3 (La.App. 3 Cir. 12/10/08) 998 So.2d 1242, 1244.

The analysis for excessive-sentence claims is settled:

This court has previously discussed the standard for reviewing excessive sentence claims:

[Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331 (citations omitted)(second alteration in original). "[T]he trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1[;] the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983).

In *State v. Lisotta*, 98-648, p. 4 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, 58, *writ denied*, 99-433 (La.6/25/99), 745 So.2d 1183, the fifth circuit held that a reviewing court should consider three factors in reviewing sentences imposed by the trial court: (1) "the nature of the crime," (2) "the nature and background of the offender, and" (3) "the sentence imposed for similar crimes by the same court and other courts."

*State v. Chaisson*, 09-119, pp. 25-26 (La.App. 3 Cir. 10/7/09), 20 So.3d 1166,

1182-83.

With regard to maximum sentences, our courts have stated:

> Generally, maximum penalties are reserved for the worst offenders and the worst offenses. *State v. Lathers*, 444 So.2d 96 (La.1983). Although obviously harsh, the present sentences appear warranted by the seriousness of the offenses, defendant's ample criminal history, his propensity for recidivism and the very severe injuries caused. See, e.g., *State v. Douglas*, 389 So.2d 1263 (La.1980); *State v. Proctor*, 354 So.2d 488 (La.1977); *State v. Wright*, 535 So.2d 765 (La.App. 2d Cir.1988); *State v. Weeks*, 449 So.2d 1158 (La.App. 2d Cir.1984), all affirming maximum 99-year sentences for armed robbery. Similarly, note the affirmance of maximum 30-year sentences for aggravated burglary in *State v. Howard*, 414 So.2d 1210 (La.1982); *State v. Lambert*, 550 So.2d 847 (La.App. 2d Cir.1989); *State v. Harden*, 506 So.2d 1265 (La.App. 2d Cir.1987), [*writ denied*], 512 So.2d 438 (La.1987), and *State v. Bibbens*, 525 So.2d 255 (La.App. 1st Cir.1988). Likewise, see *Proctor, supra*, and *State v. Washington*, 550 So.2d 698 (La.App. 2d Cir.1989), both sustaining maximum 50-year sentences for attempted second degree murder.

*State v. Grillette*, 588 So.2d 1338, 1343 (La.App. 2 Cir. 1991).

In the present case, the sentencing judge stated:

THE COURT:

> Mr. Guillory, the crime that you perpetrated upon Ms. Martinez, who is the victim, was one that was heinous and cowardly. But for the fact that she pretended or played dead, you might still not have been apprehended.

At the hearing on the motion to reconsider sentence, defense counsel based his argument on what he considered as weak identification evidence offered at trial. Thus, the judge did not have occasion to give any further reasons for the sentence.

The trial court's reasons for the sentences, although quite brief, fully support them. After punching her several times, Defendant choked the supine victim. To save herself, she simulated death. As the trial judge's brief remarks at sentencing indicated, it is likely that the victim preserved her own life by pretending to die. The act of choking another person has been repeatedly recognized as indicative of a

12

specific intent to kill. *See, e.g., State v. Young*, 00-1437 (La. 11/28/01), 800 So.2d 847; *State v. Ware*, 07-968 (La.App. 3 Cir. 3/5/08), 980 So.2d 730, *writ denied*, 08-847 (La. 10/31/08), 994 So.2d 534; *State v. Durand*, 07-4 (La.App. 5 Cir. 6/26/07), 963 So.2d 1028, *writ denied*, 07-1545 (La. 1/25/08), 973 So.2d 753; *State v. Bernard*, 39,579 (La.App. 2 Cir. 4/6/05), 899 So.2d 818.

Thus, in the course of the second degree robbery, Defendant inflicted a brutal beating on the victim. Her left eye swelled shut, and she suffered a broken ankle bone. Defendant ended the incident by trying to kill the victim. The victim's quick thinking prevented the incident from becoming a completed murder. For these reasons, we find that the sentences are not excessive.

## DISPOSITION

Defendant's convictions and sentences are affirmed. The trial court is instructed to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within thirty days of the rendition of this opinion and to file written proof in the record that Defendant received the notice.

**AFFIRMED WITH INSTRUCTIONS.**