# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-347

**STATE OF LOUISIANA**

**VERSUS**

**ERIC DEWAYNE LEFLEUR A/K/A ERIC VEZIA
A/K/A DERRICK LAFLEUR A/K/A DERRICK VEZIA**

************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 18905-16
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE

***********

**SYLVIA R. COOKS
CHIEF JUDGE**
***********

Court composed of Sylvia R. Cooks, Chief Judge, Shannon J. Gremillion and D. Kent Savoie, Judges.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

**Steven C. Dwight, District Attorney**
**David S. Pipes, Assistant District Attorney**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Bruce G. Whitaker**
**Louisiana Appellate Project**
**1215 Prytania Street, Suite 332**
**New Orleans, LA 70130**
**(504) 554-8674**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Eric Dewayne Lefleur**

**COOKS, Chief Judge.**

On August 27, 2016, N.V. was living in Moss Bluff, Louisiana. That evening, after putting her daughter to bed, she fell asleep while watching television.[1] Defendant, Eric Dwayne Lafleur (a/k/a Eric Vezia, a/k/a Derrick Lafleur, a/k/a Derrick Vezia) entered the rear door of the apartment. N.V. awoke and Defendant told her he had money for N.V.'s roommate. She told Defendant that her roommate was not there and tried to call her on the phone. Defendant then grabbed the phone and threatened N.V.'s daughter. She responded by telling him that she would do anything he wanted, seeking to protect her daughter. Defendant then pulled down her shorts, removed her tampon, and forced his penis into her vagina. When she tried to escape, he choked her unconscious. Shortly thereafter, he dragged her outside and forced her to fellate him. Although he verbally expressed some confusion or regret for his actions, he subsequently pushed her to the ground and again forced his penis into her vagina. When her neighbors got home, Defendant picked her up and started to carry her toward some nearby woods. N.V. begged him to take her home, to which Defendant replied: "Shut up, I don't want a murder charge." Ultimately, N.V. was able to escape to a neighbor's residence.

On September 3, 2016, at 2:30 a.m., Defendant knocked on the door of a residence in Sulphur, Louisiana. D.B., who was in her late teens and living with her mother, woke up and answered the door. Defendant stated he had marijuana for her mother. An admitted marijuana smoker, D.B. followed him to his truck after he told her he had a pound of the substance. After arriving at his truck, Defendant then claimed he had the marijuana at his hotel room. When D.B. hesitated, he grabbed her and told her that she needed to come with him. When they got to the hotel room, Defendant appeared to take an erectile pill. He asked her questions of a sexual nature, and she expressed a desire to call her mother. He then grabbed her throat

---

[1] Initials of the victims are being used pursuant to La.R.S. 46:1844(W).

with both hands, threatened her, and forced his penis into her vagina. Next, he forced her to fellate him, then forced his penis into her vagina again. When he left the hotel room, she ran to the front desk and called 911.

On September 7, 2016, C.M. was shopping at a Dollar General in Lake Charles when Defendant approached her and struck up a conversation. She agreed to drive him to his aunt's apartment. She soon realized that something was wrong, and they struggled for control of the steering wheel. C.M. managed to escape from the car, but Defendant stole her purse and drove off in her car. She went to a nearby gas station and alerted the authorities.

On September 9, 2016, at 3:00 a.m., A.M. awoke to find Defendant in her trailer. She agreed to give him a ride so that he would leave her trailer in order to protect her sleeping daughter. When they arrived at a house that Defendant claimed belonged to his mother, he insisted that she go into the house with him. They struggled and fell outside the car; he put his hand inside her clothes and on her vagina. When one of her dogs jumped out of the car, A.M. called for it to bite her assailant. Defendant jumped back into the car and drove away. A.M. found an open store and called 911.

On September 14, 2016, R.M. met with Defendant in an attempt to secure methamphetamine. She picked him up at a Wendy's and Defendant produced some Xanax, which she took. After some other stops, Defendant guided her to a field on the pretense of stopping by his mother's house. He pulled down her pants and forced his penis into her vagina and her anus. At one point, he threatened "to choke [her] out."

Subsequent investigation by law enforcement led to Defendant's arrest. On September 26, 2019, a Calcasieu Parish grand jury indicted Defendant for three counts of first degree rape, in violation of La.R.S. 14:42; one count of simple robbery, in violation of La.R.S. 14:65; two counts of carjacking, in violation of

3

La.R.S. 14:64.2; sexual battery, in violation of La.R.S. 14:43.1; and one count of simple burglary, in violation of La.R.S. 14:62.

On October 16-18, 2019, the parties selected a jury. The jury began hearing evidence on October 21, 2019; ultimately, it found Defendant guilty of two counts of first degree rape, one count of third degree rape, one count of simple robbery, two counts of carjacking, one count of sexual battery, and one count of simple burglary.

The district court conducted a sentencing hearing on February 14, 2020. The court sentenced Defendant to life imprisonment for each count of first degree rape; twenty years at hard labor for third degree rape; seven years at hard labor for simple robbery; fifteen years at hard labor for one of the carjacking; ten years at hard labor for sexual battery; ten years at hard labor for the second carjacking conviction; and two years at hard labor for simple burglary. The sentences for counts three through eight are concurrent with count two, but counts one and two are consecutive to one another.

Defendant now appeals, assigning two errors through counsel. Also, he filed a single assignment of error pro se.

### ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, Defendant challenges the sufficiency of the evidence. Specifically, he alleges that the evidence adduced at trial did not support his convictions for counts one and two, first degree rape, because the evidence did not prove that he used force or made threats, as required by the applicable statute. In his second assignment of error, Defendant raises the problem of non-unanimous jury verdicts, which could invalidate two of his convictions.

The general test for an insufficiency claim is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct.

4

2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

First degree rape is defined by La.R.S. 14:42, which states in pertinent part:

A. First degree rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.

(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

In this assignment of error, Defendant is focused solely on his convictions of first degree rape pursuant to counts one and two. As we fully address later in this opinion, pursuant to *Ramos v. Louisiana*, __ U.S. __, 140 S.Ct. 1390 (2020), we are required to vacate the conviction on count two, the alleged first degree rape of D.B, because it was based on a non-unanimous jury verdict. Therefore, we will address the sufficiency of the evidence as to count one, the alleged first degree rape of N.V. Further, we note Defendant does not seek to completely overturn his rape conviction on count one, but simply seeks to reduce it from first degree rape to second degree rape. Second degree rape is defined by La.R.S 14:42.1, which states in pertinent part:

A. Second degree rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent

of the victim because it is committed under any one or more of the following circumstances:

> (1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

As mentioned earlier, Defendant used physical force in the course of raping N.V. Defendant threatened N.V.'s daughter, pressed his forearm into N.V.'s throat during the initial rape, and choked her unconscious when she tried to run away. When they were outside, he pushed her down in some bushes to facilitate further forced sexual activity; when she tried to escape again, he choked her unconscious again. At one point he mentioned that he did not want to get charged with murder. Thus, the evidence supports the conviction for first degree rape regarding N.V.

Defendant argues that the distinction between first degree rape and second degree rape is unclear. He states: "[F]or purposes of this case, a life sentence turns on the distinction - if any can be discerned – between 'resistance overcome by force' or by 'threats of great and immediate bodily harm, accompanied by apparent power of execution' on one hand, and resistance overcome by 'threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.'"

Defendant acknowledges *State v. Parish*, 405 So.2d 1080 (La.1981) (on rehearing), in which the supreme court discussed aggravated rape and forcible rape, as the offenses were then termed.[2] The court stated that it was the jury's function to assess the evidence and "return[] a verdict which appropriately fits the crime and the degree of force employed." *Id.* at 1087.

Defendant also cites *State v. Headley*, 541 So.2d 396, 397-98 (La.App. 4 Cir. 1989), which explained:

---

[2] La.R.S. 14:42 and 14:42.1 were amended in 2015 to change the names of the offenses from "aggravated rape" and "forcible rape" to "first degree rape" and "second degree rape."

The distinction between the statutes is obvious. In the case of aggravated rape the defendant's power to carry out his threats must be proved as an objective fact as perceived by a third party like the juror. In order to convict the defendant the trier of fact must be convinced that the defendant had the power to carry out his threats. In the case of forcible rape the test is subjective; did the victim reasonably believe that resistance on her part would not prevent the rape even though from the objective viewpoint of the juror the defendant might lack the power of carrying out his threats.

Defendant relies on *State v. Parish*, 405 So.2d 1080 (La.1981) in support of his position that the evidence supports a conviction of forcible rape, but not aggravated rape. Although the Court found the definitions in the two statutes to be "virtually identical" at page 1086, there is a distinction between "virtual" identity and actual identity. The Court acknowledged that the distinction between aggravated and forcible rape is the degree of force employed and the extent to which the victim resists. Page 1087. The cited case involved a conviction of attempted aggravated rape, not the completed act. The facts show that Parish never exerted great force and abandoned his attempt before encountering strenuous resistence [sic] for no reason other than a change of heart. He did not fondle the victim or subject her to any indignity. The Court observed, "Within the range of attempted coercive sexual acts, the offense in this case clearly falls among those involving a minimal use of force. Although the victim was frightened and perhaps disturbed psychologically, she was released substantially unharmed." These facts stand in sharp contrast with those of the instant case. Defendant picked up his frail, elderly victim and threw her on her bed, he stripped off her panties and stopped her from shouting for help by threatening to beat her. Far from being "substantially unharmed" she was raped twice under the threat of an immediate beating if she resisted.

In *Parish* the Court found that the degree of force employed by defendant was insufficient to support the jury's conclusion that the defendant was guilty of attempted aggravated rape. In the instant case the State proved beyond a reasonable doubt that the defendant did exert the high degree of force required to prove aggravated rape as opposed to forcible rape. This conclusion is compatible with the decision in *State v. Helaire*, 496 So.2d 1322 (La.App. 3rd Cir.1986) in which the *Parish* case was distinguished by the degree of force extended by *Helaire* on his fourteen year old victim.

In *State v. Helaire*, 496 So.2d 1322, 1326-27 (La.App. 3 Cir. 1986), *writ denied*, 503 So.2d 13 (La.1987), this court explained:

The Louisiana Supreme Court has held that the sole distinction between the crimes of aggravated rape and forcible rape is "the degree of force employed and the extent to which the victim resists." *State v. Parish*, 405 So.2d 1080, 1087 (La.1981), *affirmed*, 429 So.2d 442 (La.1983). In *Parish*, *supra*, the high court concluded that it was the legislative aim to divide the continuum of acts of coerced sexual

intercourse into two categories, aggravated rape and forcible rape; thereby, assigning to the jury the function of fixing the range of permissible punishment for convicted offenders by returning a verdict which appropriately fits the crime and the degree of force employed. See, *State v. Willie*, 422 So.2d 1128 (La.1982).

There is no magic formula to determine which acts of coerced sexual intercourse warrant the greater punishment of aggravated rape rather than forcible rape. Each case must be examined on its own facts. *State v. Jackson*, 437 So.2d 855 (La.1983).

Based upon the facts herein, and viewing the evidence in a light most favorable to the prosecution, the jury could determine that a sufficient amount of force was in fact used to constitute the crime of aggravated rape. *State v. Robinson*, 471 So.2d 1035 (La.App. 1st Cir.), *writ denied*, 476 So.2d 350 (La.1985).

Since the victim was only fourteen at the time of the offense and the defendant was much heavier and stronger, the jury could find that the victim resisted to her utmost. The threat of great and immediate bodily harm accompanied by apparent power of execution could be found by the jury when the defendant threatened to do something to her and her mother and she wouldn't like it. Stepping into the mind of the victim, viewing the evidence most favorable to the prosecution, it is conceivable that the defendant's threats could pose a great and immediate danger to the victim, especially since her offender represented an authoritative figure, her stepfather. In addition, the statute is clearly designed not merely to protect against threats upon the victim but also to protect against non-consensual sexual intercourse through destruction of the victim's will to resist. It is reasonably within the legislative intent to interpret the statute as prohibiting such rapes through means of threats of great and immediate bodily harm upon a person whom the victim is legally, morally or emotionally obliged to defend. *State v. Crochet*, 354 So.2d 1288 (La.1977). Thus the defendant's threat to the victim's mother would qualify as a threat of great and immediate bodily harm.

In light of *Kennerson* and the jurisprudence that Defendant himself cites, it is clear that the jury's decision to convict him of the first degree rape of N.V. was not irrational. Defendant combined threats with manual strangulation of the victim. Strangulation is obviously a potent form of attack, as many homicide cases have recognized. "The act of choking another person has been repeatedly recognized as indicative of a specific intent to kill." *State v. Guillory*, 10-1175, pp. 12-13 (La.App. 3 Cir. 4/6/11), 61 So.3d 801, 809. This assignment of error lacks merit.

# PRO SE ASSIGNMENT OF ERROR

In his sole pro se assignment of error, Defendant argues his appellate counsel is ineffective for failing to challenge the sufficiency of the evidence for his convictions under counts three through eight. An ineffective assistance of counsel claim is properly raised in the post-conviction relief process; however, where the record contains sufficient evidence to decide the issue, it may be considered on appeal. *State v. Christien*, 09-890 (La.App. 3 Cir. 2/3/10), 29 So.3d 696.

Pursuant to *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), review of ineffective assistance claims consists of a two-part test: (1) that counsel's performance fell below prevailing professional standards; and (2) counsel's inadequate performance prejudiced defendant's case. In the present case, the first step of the test necessitates a *Jackson/Kennerson* review for sufficiency of the trial evidence, as described earlier. As the current record includes the trial transcript, it provides enough information to address the sufficiency issue and thus the ineffectiveness issue.

Defendant argues that his appellate counsel's challenges to the sufficiency of the evidence in counts one and two constituted ineffective assistance because counsel should have challenged counts three through eight, as well. He argues that count three, simple robbery, was not proven, as the State failed to demonstrate that he took "anything of value." The statute governing simple robbery, La.R.S. 14:65, states in pertinent part: "Simple robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon." The term "anything of value" is defined by La.R.S. 14:2(2), which states in pertinent part:

> "Anything of value" must be given the broadest possible construction, including any conceivable thing of the slightest value, movable or immovable, corporeal or incorporeal, public or private, and including transportation, telephone and telegraph services, or any other service available for hire. It must be construed in the broad popular

sense of the phrase, not necessarily as synonymous with the traditional legal term "property."

As the State points out in its supplemental brief, Defendant forcibly took C.M.'s purse from her possession, then fled in her car. In court, she identified Defendant as her assailant. The Welsh Police Department recovered C.M.'s car and called her the day after the incident. When she went to the police department in response to the call, she saw one of her earrings on the counter of the lobby. She later found the matching earring in her car. The earrings had been in the purse that Defendant took from her. Thus, the State proved that Defendant took things of value from C.M.

Defendant also attacks his conviction under count four, carjacking. Defendant argues the police testimony failed to prove that he committed this offense. The applicable statute, La.R.S. 14:64.2(A), explains: "Carjacking is the intentional taking of a motor vehicle, as defined in R.S. 32:1(40), belonging to another person, in the presence of that person, or in the presence of a passenger, or any other person in lawful possession of the motor vehicle, by the use of force or intimidation." As already noted, the State adduced direct testimony that Defendant took possession of C.M.'s car and drove away with it. Pursuant to *Kennerson* and *Jackson*, it was within the jury's province to assess C.M.'s credibility; assessing the evidence in the light most favorable to the prosecution, the State properly proved Defendant's guilt of this offense.

Regarding count five, Defendant challenges his conviction for sexual battery of A.M. He asserts that the trial evidence did not demonstrate the victim was injured; he also claims the evidence did not demonstrate he was the individual who drove away from the crime scene in A.M.'s car.

Sexual battery is defined by La.R.S. 14:43.1, which states in pertinent part:

> A. Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any

10

part of the body of the offender, directly or through clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when any of the following occur:

(1) The offender acts without the consent of the victim.

Thus, there is no requirement that the State prove a victim sustained an injury to secure a conviction for sexual battery. Also, it is irrelevant who drove away in A.M.'s car. As the State points out, the victim testified that Defendant was the man who touched her vagina. Pursuant to *Kennerson* and *Jackson*, the State adduced sufficient evidence to support Defendant's conviction for the sexual battery of A.M.

Defendant makes no argument regarding the sixth count. As for count seven, Defendant claims the State failed to prove he committed a simple burglary of Jose Gomez because it did not demonstrate that he took anything of value from Mr. Gomez's truck. One of the victims in this case, R.M., testified that on September 14, 2016, she met with Defendant in an attempt to obtain methamphetamine from him. They drove to a nearby motel, and Defendant broke the window of a truck in the parking lot and stole the dashboard radio and some tools from it. Later, he raped her; police arrived just as they were putting their clothes back on.

Corporal Jacob Pearson responded to the rape scene as backup for other police officers who had already arrived. After receiving information from the victim that Defendant had broken into a truck, Pearson drove to the scene of that crime. He found a truck with the glass broken out of the driver's-side front window and the radio missing from the dashboard.

During police questioning, Defendant initially denied going into the cab of the truck, but he admitted taking tools from the bed. He claimed that the victim, R.M., took the radio; however, police did not believe him because she is physically small and one of her arms has a deformity. At one point, Defendant stated that he did reach into the truck. Also, the stolen radio was recovered from his truck. The

evidence was sufficient to establish Defendant took a thing of value, as the dashboard radio from the truck was a corporeal object with some value. Therefore, his argument regarding count seven lacks merit.

Finally, Defendant addresses count eight, noting that it was originally charged as first degree rape, but the jury returned a verdict of a lesser-included offense, third degree rape. He states that this reduction demonstrates that the State did not adduce sufficient evidence to support the first degree rape offense charged. Apparently, the jury agreed with Defendant's assessment, but he has already received the benefit of the jury's analysis of the evidence. Thus, there is no relief for this court to grant regarding the eighth count.

In light of the forgoing discussion, Defendant's sufficiency-based arguments fail. Therefore, he has not met the first step of *Strickland*, i.e., that appellate counsel's actions fell below prevailing professional standards.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, Defendant argues that his convictions and sentences under counts two and eight, i.e., first degree rape and third degree rape, should be vacated, as the convictions on those counts are based on non-unanimous verdicts. Pursuant to *Ramos v. Louisiana*, __ U.S. __, 140 S.Ct. 1390 (2020), unanimous verdicts are required to support convictions for serious offenses. The State acknowledges that the conviction under count two for first degree rape and the conviction under count eight for third degree rape were the products of non-unanimous verdicts and must be vacated pursuant to *Ramos*. Therefore, in light of *Ramos*, the convictions and sentences under counts two and eight, i.e., first degree rape and third degree rape, should be vacated and the case remanded for new trial.

**DECREE**

For the foregoing reasons, Defendant's convictions and sentences under counts two and eight, first degree rape and third degree rape, are vacated, and the case remanded for new trial. The remaining convictions and sentences are affirmed.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**